# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LISA C. M.,[1]

          Plaintiff,

                                  **Case No. 3:20-cv-14153**

   v.                              **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

          Defendant.

## OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Lisa C.M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.     PROCEDURAL HISTORY

On November 13, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since April 1, 2016. R. 83, 100,160–61. The application was denied initially and upon reconsideration. R. 102–06, 110–12. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 113–14. Administrative Law Judge ("ALJ") Mark Solomon held a hearing on March 10, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35–66. In a decision dated April 29, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 1, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–29. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 19, 2020. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 30, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10, 11.[3] On that same day, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 56 years old on April 1, 2016, her alleged disability onset date. R. 28. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 18.

At step two, the ALJ found that Plaintiff 's post-traumatic stress disorder ("PTSD") and history of bronchitis were severe impairments. *Id*. The ALJ also found that Plaintiff's diagnosed chronic urticaria, gastritis, and GERD were not severe impairments. R. 18−19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19−20.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 21−28. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a manager, brokerage office. R. 28.

At step five, the ALJ found that a significant number of jobs−*i.e*., approximately 50,000 jobs as a hand packager; approximately 67,000 jobs as a laundry worker; approximately 37,000

jobs as a warehouse worker–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 1, 2016, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

## IV.   RELEVANT MEDICAL EVIDENCE

### A.   J. Theodore Brown, Jr., Ph.D., the Consultative Examiner

On February 11, 2019, J. Theodore Brown, Jr., Ph.D., conducted a consultative psychological examination of Plaintiff at the request of the state agency. R. 321-325. His initial impression of Plaintiff, "a 9/11 survivor," R. 321, was "a 7 or 8" on a 1-10 mental status scale. *Id.* Plaintiff reported sleep difficulty, depression and survivor's guilt. *Id*. On examination, Plaintiff's thought processes were coherent and goal directed, without evidence of delusions, hallucinations, or paranoia. R. 323. She was oriented, her mood was neutral, and her affect was appropriate. *Id*. She reported that her activities of daily living included cooking, cleaning, laundry, and shopping; she has friends and her family relationships were good. R. 324. However, she also reported that she spends her time at home in bed, "negotiating her energy and symptoms to do what housework and other activities she can when she can." *Id.* Dr. Brown diagnosed

major depressive disorder, r/o psychosis, unspecified, posttraumatic stress disorder, panic, anxiety disorder, generalized anxiety disorder, and paranoid personality disorder. *Id.* Her prognosis was "[u]ndetermined, very much dependent upon her continuing to receive and being able to benefit from mental healthcare support and treatment." *Id.*

B.   **Sandra Diaz, Ph.D., a State Agency Reviewer**

On February 15, 2019, Sandra Diaz, Ph.D., reviewed the record on behalf of the state agency and concluded that the record documented depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; and trauma and stressor-related disorders. R. 76. Limitations on Plaintiff's ability to understand, remember, or apply information were characterized as "mild," as were those relating to her abilities to interact with others and to adapt or manage herself. *Id.* Limitations on her ability to concentrate, persist, or maintain pace were characterized as "moderate." *Id.* Dr. Diaz explained, in pertinent part:

> [Plaintiff] worked as a financial consultant (2016) and financial manager (1991-2015). She last worked on 03/30/2016 because of her conditions. A review of the Psyc CE and functional report was conducted. Overall, there is no psyc evidence of any marked limitations. She continues to get her basic needs met and complete basic tasks, takes care of her son and manages her household. She has no problems going alone. She walks her dog, goes grocery shopping, drops off her son and picks him up. She goes out to dinner, or the movies, celebrates birthdays and sees friends once in a while. She reports going to her son's school, attend curch and shops at stores on a regular basis. She takes her son to the doctor's on a regular basis for his ADHD. She has no history of any inpatient psychiatric hospitalizations no recent psychiatric, voluntary or involuntary. She reports that she is no[t] taking any medications. She appears to be functioning quite well despite her conditions. Her symptoms appear to be moderately severe. She is capable of managing her funds. She appears capable of doing skilled or unskilled work.

R. 80.

C.      **Jeanette Maldonado, Psy.D., a State Agency Reviewer**

Jeanette Maldonado, Psy.D., reviewed Plaintiff's medical record on reconsideration by

the state agency on August 12, 2019. R. 84−99. In assessing the criteria for Listings addressing

depressive, bipolar, and related disorders, and trauma and stressor-related disorders, Dr.

Maldonado opined, *inter alia*, that Plaintiff had moderate limitations in her ability to understand,

remember, or apply information, and to concentrate, persist, or maintain pace, and only a mild

limitation in her ability to interact with others and adapt or manage herself. R. 94. Assessing

Plaintiff's mental RFC, Dr. Maldonado indicated that Plaintiff had no limitation in understanding

and memory, explaining as follows:

> STRESS CARE REPORTED AS NORMAL THE RECENT AND REMOTE
> MEMORY, THE C/E ME/E FOUND THAT SHE COULD REMEMBER 3/3
> ITEMS I[M]MEDIATELY AND 2/3 AFTER 5 MINUTES. CLAIMANT
> ALLEGES MEMORY PROBLEMS, BUT INFORMED TO BE ABLE OF [sic]
> PAY BILLS AND SHO[]P. HER ALLEGED ME[M]ORY DEFICIT WAS NOT
> SUSTAINED BY EVIDENCE IN RECORD.

R. 96. Plaintiff was not significantly limited in her ability to carry out very short and simple

instructions, maintain attention and concentration for extended periods, sustain an ordinary

routine without special supervision, work in coordination with or in proximity to others without

being distracted by them, and make simple work-related decisions. *Id*. However, Plaintiff was

moderately limited in her ability to carry out detailed instructions, to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances, and in her

ability to complete a normal workday and workweek without interruptions from psychologically

based symptoms, and to perform at a consistent pace without an unreasonable number and length

of rest periods. Dr. Maldonado explained her opinion in this regard as follows:

> STRESS CARE REPORTED AS NORMAL[.] THE CONCENTRATION[] THE
> CE FOUND PREVIOUSLY[] THAT SHE COULD MENTION AS 12 THE
> MONTHS OF THE YEAR AND COULD NOT SUB[]TRACT THE SERIAL 7

> AND HAD DIFFICULTY WITH THE SERIAL 3. CLAIMANT ALLEGES THAT [SHE] CAN SUSTAIN ATTENTION DEPENDING ON HER MIND DRIFTS, BUT IN SPITE OF IT, TO BE ABLE [TO] MANAGE HER FINANCES, COOK BY TIME AS WELL AS PERFORM THE HOUSE CHORES AND DRIVE HER AUTO ALONE. ALTHOUGH HER CONCENTRATION DEFICITS, ANXIOUS AND DEPRESSIVE MOOD, FEARS, CRYING SPELLS AND YELLING EPISODES BY TIME, SHE STILL RETAIN[S] THE COGNITIVE SKILLS AS NORMAL RECEPTIVE AND EXPRESSIVE LANGUAGE AS WELL [AS] THE ORIENTATION, NORMAL THINKING PROCESS, NO HALLUCINATIONS, DELUSIONS, PARANOIA, IS COHERENT AND GOAL DIRECTED, AVERAGE INTELLECT AND COOPERATIVE, AND IS ALLOW [SIC] OF PERFORM [SIC] SIMPLE TASKS WITHIN THE []WEEKLY DEMANDS OF PACE, OF CONCENTRATION FOR [ILLEGIBLE] EMOTIONAL ESTATE BY 05/14/2019.

R. 96–97. Dr. Maldonado further opined that Plaintiff was not significantly limited in her ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, but was moderately limited in her ability to interact with the general public, explaining as follows: "HER DEPRESSIVE REACTIONS BY TIME AND OF ANXIETY TO HER P.T.S.D., WILL NOT ALLOW HER TO INTERACT WITH THE GENERAL PUBLIC CONTINUALLY, BUT CAN RELATE WITH PEERS AND ACCEPT SUPERVISION AND CRITICISM." R. 97. Under the heading "MRFC – Additional explanation[,]" Dr. Maldonado explained:

> AT RC LEVEL THIS 60 YEAR[] OLD FEMALE DO[ES] NOT ALLEGE[] TO HA[VE] WORSEN[ED] HER EMOTIONAL DISORDERS SINCE INITIAL LEVEL NOR THE NEW M/E IN FILE SUSTAIN THE OPPOSITE[.]HER ALLEGE[D] PANIC ATTACKS []OR PARANOID IDEATIONS ARE NOT SUSTAINED BY THE M/E PROVIDED BY THE T/SOURCES. THE EVIDENCE IN RECORD SUSTAIN[S] A MODERATE EMOTIONAL DISORDER DUE TO ANXIETY AND DEPRESSION.
>
> A PRTF AND *A FLEXIBLE MRFC FO[]R SIMPLE TASKS* ARE INCLUDED IN RECORD.

DX:    P.T.S.D. MODERATE
         DEPRESSIVE DISORDER (NOS)[.]

R. 97−98 (emphasis added). Dr. Maldonado concluded that Plaintiff was not disabled. R. 99.

### D.    Nicole Willms,[4] LPC, Plaintiff's Treating Counselor

Nicole Willms, LPC, Plaintiff's treating licensed professional counselor, completed a

psychiatric report on August 6, 2019. R. 454−59. Ms. Willms noted that Plaintiff's weekly

treatment sessions began on April 12, 2019. R. 454. Ms. Willms' DSM-IV diagnosis was PTSD

with symptoms of being "unable to work, difficulty concentrating, increased appetite,

nightmares, flashbacks, paranoia, irritability, hypervigilance, panic attacks[.]" *Id*. In addressing

Plaintiff's psychiatric history, Ms. Willms noted that Plaintiff had attended a "couple of

sessions" with a therapist for all 9/11 survivors,[5] was provided "case management through World

Trade Center Foundation," and was "certified with PTSD by the US government[.]" *Id*. On

mental status evaluation, Ms. Willms found that Plaintiff was alert; oriented times three;

paranoid about safety but with no observed suicidal, homicidal, or hallucinations; had an anxious

mood, sad affect, and restless behavior, but had normal appearance and speech, good judgment,

and appropriate intellect. R. 455. Plaintiff's concentration was "okay when focused but cannot

concentrate when anxious, is having panic attacks, depressed, or triggered by her PTSD;" she

"has a vivid memory of her traumas[.]" *Id*. Ms. Willms also noted that Plaintiff could

immediately recall three out of three words and could recall content earlier in the session, events

of the past week, and long-term events, and track conversation. *Id*. Plaintiff could complete serial

3's and repeat digits forward but not backward. *Id*. Ms. Willms noted that Plaintiff experienced

---

[4] The ALJ and Acting Commissioner mistakenly refer to this individual as "Nicole Williams." R.
23, 26−27; *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 4−7, 14−17.
[5] Plaintiff "was working at World Trade Center at the time of the terrorist attack on September
11, 2001." R. 22.

weekly panic attacks that last 15 to 20 minutes and during which Plaintiff had breathing difficulty, rapid heartbeat, increased blood pressure, and a feeling of inability to move, and which included screaming and crying. R. 456. Plaintiff "cannot focus or function during panic attacks[.]" *Id*. The panic attacks are "[r]andomly triggered by tragedy, loud noises, and reminders of trauma[.]" *Id*. Based on these findings, Ms. Willms was of the opinion that Plaintiff had no limitation in her ability to understand and remember, noting that Plaintiff "vividly remembers her trauma which leads to increased triggers[.]" R. 457. Ms. Willms further opined that Plaintiff was limited in her ability to sustain concentration and persist, explaining that Plaintiff "has difficulty with sustained concentration due to feeling 'on guard' and needing to make sure that she is safe. Panic attacks and depression may lead to attendance issues." *Id*. Ms. Willms also opined that Plaintiff was limited in her ability to socially interact, finding that Plaintiff "has difficulty in public places due to anxiety and PTSD and being focused on her safety. She has difficulty regulating her emotions." *Id*. According to Ms. Willms, Plaintiff was also limited in her ability to adapt, explaining that Plaintiff "cannot use public transportation due to fear and cannot respond calmly to sudden changes or hazards." *Id*. Ms. Willms went on to note that Plaintiff "reports issues due to 9/11 related illnesses including chronic hives, bronchitis, thyroid nodules, and more." *Id*. In describing Plaintiff's daily activities, Ms. Willms noted that Plaintiff "has a teenage son whom she has difficulty taking care of due to not being able to get out of bed with depressed mood or panic attacks when triggered. She is having trouble when she sees planes, goes over bridges, or is in crowded public places." R. 458. In finding that Plaintiff has only a mental (not physical) impairment, Ms. Willms opined that Plaintiff has "PTSD which leads to anxiety and depressed mood." *Id*. According to Ms. Willms, Plaintiff "has made a little bit of progress but continues to have triggers and stress which impede optimal functioning." *Id*. Ms. Willms also

13

noted that Plaintiff was not taking any medication. According to Ms. Willms, Plaintiff's prognosis was fair and she was capable of managing or directing the management of benefits in her own best interest. *Id.*

On February 21, 2020, Ms. Willms completed a two-page, check-the-box, and fill-in-the-blank form entitled "Medical Assessment of Ability to Do Work Related Activities (Mental)." R. 541–42. In describing Plaintiff's ability to perform activities, Ms. Willms used the following terms: Unlimited or very good ("ability to function in his area is more than satisfactory); good ("ability to function in this area is limited by satisfactory"); fair ("ability to function in this area is seriously limited but not precluded"); and poor or none ("[n]o useful ability to function in this area"). R. 541. In assessing Plaintiff's occupational adjustments (her "ability to adjust to a job"), Ms. Willms opined that Plaintiff had a fair ability to follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stresses; function independently; and maintain attention/concentration. *Id.* In support of these findings, Ms. Willms explained:

> Due to the client's PTSD which includes symptoms of anxiety and depression, she is often very suspicious of others, is constantly thinking of worst case situations, has difficulty with maintaining focus, feels constantly overwhelmed which makes it hard for her to deal with stress, and often needs to reach out to others to help her deal with life if she has a good relationship with them.

*Id.* In assessing Plaintiff's performance adjustments (her "ability to adjust to a job"), Ms. Willms opined that Plaintiff had a fair ability to understand, remember, and carry out simple job instructions, but poor or no ability to understand, remember, and carry out complex job instructions, and to understand and remember, and poor or no ability to carry out detailed but not complex job instructions. R. 542. "Due to her limited concentration and focus due to racing thoughts and anxiety, [Plaintiff] is unable to remember and carry out instructions." *Id.* In

14

assessing Plaintiff's ability to adjust personally and socially, Ms. Willms opined that Plaintiff

had an unlimited/very good ability to maintain personal appearance; a good ability to

demonstrate reliability; and a fair ability to behave in an emotionally stable manner and relate

predictably in social situations. *Id*. In explaining these findings, Ms. Willms stated that Plaintiff

"feels often overwhelmed, depressed, and anxious which lead to panic attacks, tearfulness, fear,

worry, and feeling as though she cannot function." *Id*. Plaintiff "often experiences anxiety and

panic being around large groups of people and being in new environments which leads to

depressed mood as she is no longer able to function the way she had in the past." *Id*. According

to Ms. Willms, Plaintiff's limitations have been present since September 11, 2001. R. 542.

Finally, Ms. Willms opined that Plaintiff could manage benefits in her own best interest. *Id*.

## V.   DISCUSSION

### A.   RFC and Opinion Evidence

The ALJ found that Plaintiff has the RFC for a full range of work at all exertional levels

but with certain nonexertional limitations:

> [T]he claimant can perform work that avoids working at unprotected heights or
> with hazardous machinery. She can perform work that avoids concentrated
> exposure to respiratory irritants. She can remember, understand, and carry out
> simple instructions. She can make simple work related decisions. She can interact
> appropriately with supervisors and co-workers. She can adapt to routine changes
> in work environment but would require a job with no close interpersonal contact
> with the general public and not requiring high volume or fast paced production
> quotas.

R 21. Plaintiff argues that substantial evidence does not support this RFC because the ALJ failed

to properly consider the opinions of Dr. Maldonado and Counsellor Willms. *Plaintiff's

Memorandum of Law*, ECF No. 17, pp. 14−18; *Plaintiff's Reply Brief*, ECF No. 19, pp. 3−4.

This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §
404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with
determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc.
Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State
agency consultants—must make the ultimate disability and RFC determinations.") (citations
omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence.
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only
"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see
also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to
choose whether to include "a limitation [that] is supported by medical evidence, but is opposed
by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject
evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the
discretion to include a limitation that is not supported by any medical evidence if the ALJ finds
the impairment otherwise credible").

In finding that Plaintiff had an RFC for a full range of work at all exertional levels but
with certain non-exertional limitations, the ALJ detailed the record evidence, including, *inter
alia*, Plaintiff's January 2019 report that, although she sometimes cannot get out of bed due to
depression and has difficulties handling stress and bad moods because of her PTSD, she had no
difficulty in personal care, was basically a single parent caring for her fourteen year-old son, did
housework, shopped in stores and on-line, was able to drive, and was able to follow written and
spoken instructions; evidence that she stopped working at her long-time job in 2015 due to
downsizing and later obtained a temporary job, until the job was cut, as a consultant in
Manhattan from February 2016 to April 2016, traveling by bus from New Jersey to New York,

which required travel through the Lincoln Tunnel; evidence that she had no documented psychiatric limitations or complaints, or on-going psychiatric care, prior to stopping work in 2016 and that she did not begin treatment until 2018; Dr. Brown's February 2019 consultative report and opinions; an April 2019 mental status examination, R. 464, which reflected that Plaintiff's mood, affect, concentration, and memory were normal and her judgment, insight, and impulse were good; Plaintiff's May 2019 report of being actively engaged in a 9/11 program for survivors; Plaintiff's August 2019 report of difficulty with depressed mood and stress but feeling calmer after talking with therapist; Ms. Willms' August 2019 findings that Plaintiff's judgment was good and that she could recall three out of three words at five minutes, could recall content without issues, could recount digits forward but not backward, was capable of serial 3s, and could track conversation; the fact that, in November 2019, Plaintiff experienced a panic attack on a plane, but was able to meditate and pray throughout the flight; the fact that, despite experiencing anxiety about having to attend a friend's wedding in Manhattan, was able to attend the wedding in December 2019; and Plaintiff's January 2020 report that she felt extremely scared to travel to Manhattan, but nevertheless travelled by train, went to a theater, and walked around Times Square despite feelings of paranoia and anxiety. R. 21–24. In addition, the ALJ found—a finding that Plaintiff does not challenge—that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," noting as follows:

> Concerning the claimant's panic attacks and mental health, the record appeared to show some improvement to the claimant's conditions with treatment. Even without the use of medications, the claimant was able to drive and attend to the need of her son and to her own daily activities. She was able to maintain treatment and actively participate in her treatment. She had a stated goal to revisit the site of the 9/11 attacks and she was able to do so after returning to NYC for a wedding. While I note the alleged emotional strain caused by going out into public and traveling, the claimant appeared to be able to travel despite her anxiety symptoms.

17

Overall, the record did support limitations; however, it did not support limitations to the degree alleged by the claimant.

R. 25. The ALJ went on to summarize his reasoning as follows:

In summary, as noted above, the claimant is a truly courageous individual who survived the terrorist attack on the WTC and was fortunate to escape from the towers. Nonetheless, despite that horrific experience she was able to work and function with absolutely no limitations and no continuous or documented mental health treatment or counseling whatsoever for a period of 16 years thereafter, including starting another job in Manhattan which required the claimant to travel by public transportation through a tunnel during rush hours. Despite her alleged fears, including the incidents described at the Port Authority, the only reason she stopped working was because the job terminated notwithstanding that it was supposed to lead to a permanent position. There is simply a[] lack of any supportable and consistent findings which would lead to the conclusion that the claimant is unable to work because of her psychiatric condition, for the reasons stated above.

R. 28. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges the ALJ's RFC determination, contending that the ALJ erred in considering the opinions of Dr. Maldonado and Ms. Willms. *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 14−18; *Plaintiff's Reply Brief*, ECF No. 19, pp. 3−4. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The governing regulation emphasizes that "the most important factors [that the ALJ and the Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and

---

[6] As previously noted, Plaintiff's claim was filed on November 13, 2018.

consistency (paragraph (c)(2) of this section)." *Id.* at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the ALJ considered Dr. Maldonado's opinion as follows:

> A DDS opinion was provided by Jeanette Maldonado, Psy.D. (Exhibit 3A). While Dr. Maldonado did not have the opportunity to directly examine the claimant, Dr. Maldonado had an opportunity to review the record as it appeared on the date the opinion was made. Specifically, Dr. Maldonado opined the claimant had moderate restrictions to understanding, remembering, and applying information (Id. at 11). She had mild restriction to interaction, adaptation, and managing herself. She had

moderate restriction to concentration, persistence, and maintain pace. She was capable of managing her funds and capable of doing skilled and unskilled work (Id. at 12). She was able to perform simple tasks within the weekly demands of pace and concentration for at least two hours and sustain tasks. She would not be able to interact with the general public continually, but she could relate with peers and accept supervision and criticism (Id. at 14). She was moderately limited in changes in work settings and she was able to travel alone selectively. This opinion is also internally inconsistent as she found only mild limitations in interacting, suggesting a non-severe impairment in this criterion, yet she also opined that the claimant could not interact with the public, which would suggest at least a moderate limitation. Accordingly, I find it persuasive that the claimant does have a severe medically determinable mental limitation which, based upon limits in concentration, persistence and pace, as well as some anxiety in public (but most notably in Manhattan), I have limited her to low public contact and low production work.

R. 26. Plaintiff contends that this discussion is insufficient under the regulation because "the ALJ has failed to meaningfully address supportability and consistency findings" because "there was no discussion of the elements of Dr. Maldonado's and LPC Willm's opinions that were consistent." *Plaintiff's Memorandum of Law*, ECF No. 17, at 18, 20 (citing "Argument 1 *supra*"); *see also Plaintiff's Reply*, ECF No. 19, p. 3 (complaining that "the ALJ failed to discuss the consistency between Dr. Madonado's and LPC Willm's opinions").

Plaintiff's argument is not well taken. As set forth above, after detailing years of medical evidence, the ALJ explained that Dr. Maldonado's opinion was not supported by her own findings because this psychologist found only mild limitations in Plaintiff's ability to interact yet also found that Plaintiff could not interact with the public. R. 26. The ALJ also explained how he accommodated Plaintiff's credible limitations in this regard. *Id*. Notably, the ALJ found that Plaintiff had a moderate limitation in this area and crafted a RFC that required no close interpersonal contact with the general public. R. 21, 26. Moreover, and as summarized above, the ALJ's discussion also implicitly reflects his consideration of the inconsistency of Dr. Maldonado's opinion with other evidence in the record. R. 22–28; *see also* 20 C.F.R. §

404.1520c(c)(2); *cf. Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness."). Based on this record, any failure of the ALJ to further discuss the regulatory factors of consistency and supportability is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Although Plaintiff insists that the ALJ erred by failing to discuss those portions of Dr. Maldonado's opinion that were consistent with Ms. Willms' opinions, she does not identify the portions to which she refers. *Plaintiff's Memorandum of Law*, ECF No. 17, p. 20 (referring only to "Argument 1 *supra*" when complaining the ALJ did not discuss "the elements of these opinions that were consistent"); *Plaintiff's Reply Brief*, ECF No. 19, p. 3 (citing "Dkt. No. 17 at 23 (referencing Dkt. No. 17 at 19)"). Nor does Plaintiff explain why any such an error, if indeed any, worked to her prejudice. *See Shinseki,* 556 U.S. at 409–10. *See also Atkins v. Comm'r Soc. Sec.*, *Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt

to discern [the claimant's] position."). Moreover, Plaintiff's reference to "Dkt No. 17 at 19" (*Plaintiff's Memorandum of Law*, ECF No. 17, p. 16, PAGEID 632[7]), refers merely to a page that discussed only Plaintiff's alleged difficulty carrying out detailed instructions, but no less than a fair ability to carry out simple job instructions. *See id*. In light of the ALJ's RFC determination that limited Plaintiff to, *inter alia*,  jobs requiring only simple instructions without high volume or fast-paced production quotas, R. 21, this limitation was adequately accommodated. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208−14 (3d Cir. 2019) (finding that a "simple tasks" limitation can be said to fairly reflect a claimant's "moderate" difficulties in concentration, persistence, or pace where there is a "valid explanation" for such limitation); *Berg v. Berryhill*, No. CV 17-04452, 2019 WL 3387209, at *6 (E.D. Pa. July 26, 2019) (finding that RFC limitation to no "fast-paced production environment" adequately accommodated Plaintiff's moderate limitations in concentration, persistence, or maintaining pace). Notably, Plaintiff does not identify any new or different limitations that the ALJ should have included to accommodate these limitations. *See generally Plaintiff's Memorandum of Law*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 19. Any failure, then, to expressly compare the consistency between these opinions is, at most, harmless error. *See Shinseki*, 556 U.S. at 409–10. Based on this record, Plaintiff has not persuaded this Court that the ALJ failed to satisfy the standards of 20 C.F.R. § 404.1520c when analyzing Dr. Madonado's opinion.

Turning next to the opinions of Ms. Willms, the ALJ considered those opinions as follows:

> Nicole Williams [sic], LPC provided an assessment on August 6, 2019 (Exhibit 11F). She had no limitation to understanding and memory (Id. at 7). She was limited

---

[7] The Court presumes that Plaintiff refers to the page numbers that appear at the top right-hand corner of her brief rather than to the page numbers on the bottom center of each page, as no discussion of Dr. Maldonado's opinion appears on the page with bottom-center page number 19.

in her concentration and persistence. She was limited in social interaction. She had difficulty in public places. She was limited in her adaptation. She could not use public transportation due to fear and she could not respond calmly to sudden changes or hazards. Limitations to sustained concentration were not documented in the treatment records. The claimant's panic attacks appeared infrequent. Further, she reported being able to do all activities of daily living to Dr. Brown (Exhibit 3F). Despite the limits to travel, she noted she could drive and she was able to travel to Florida. Overall, this assessment was persuasive to the extent it supports the limitations which I have incorporated in the above residual functional capacity.

Ms. Williams [sic] provided a subsequent assessment on February 21, 2020 (Exhibit 18F). The claimant had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration (Id. at 1). She was often very suspicious of others and had difficulty maintaining focus. She felt constantly overwhelmed. She had poor or no ability to understand, remember and carry out complex job instructions (Id. at 2). She had poor or no ability to understand, remember and carry out detailed but complex job instructions. She had a fair ability to understand, remember and carry out simple job instructions. She had unlimited or very good ability to maintain personal appearance. She had a good ability to demonstrate reliability. She had a fair ability to behave in an emotional stable manner and relate predictably in social situations. She often experienced panic being around large groups of people and in new environments. She was not able to function the way she had in the past. The limitations had been present since September 11, 2001. While the record supported the claimant had some limitations, the finding that the claimant had these restrictions going back to 2001 is totally contradicted by the record and suggests that Ms. Williams [sic] was not fully aware of the claimant's work and treatment history, as there is no rational basis for that conclusion. She was able to return to work and she only stopped working when her consultant job ended in April 2016. Further, the record did not document substantial limits. This assessment noted a generally fair ability to participate in work activity and problems with detailed and complex understanding. Overall, this assessment was persuasive to the extent it supports the limitations which I have incorporated in the above residual functional capacity.

R. 26–27. To the extent that Plaintiff again complains that the ALJ failed to consider the consistency between the opinions of Ms. Willms and Dr. Maldonado, *see Plaintiff's Memorandum of Law*, ECF No. 17, p. 20, *Plaintiff's Reply Brief*, ECF No. 19, pp. 3–4, that argument is unavailing for the reasons previously discussed.

Plaintiff next argues that the ALJ improperly considered Plaintiff's activities when assessing Ms. Willms' opinions, contending that the ALJ overstated those activities (including

the activities identified in Dr. Brown's report) and arguing that the activities "do not suggest transferability to a work setting or performance of activity throughout a normal work schedule." *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 20−21; *see also Plaintiff's Reply Brief*, ECF No. 19, pp. 3−4. Plaintiff's arguments are not well taken. As a preliminary matter, the Court is not persuaded that the ALJ overstated Plaintiff's activities when assessing Ms. Willms' opinions. Although Plaintiff complains that the ALJ considered her "ability to travel to Florida once during the relevant period[,]" *Plaintiff's Memorandum of Law*, ECF No. 17, p. 21, the ALJ also considered, as Plaintiff concedes, *see id*., Plaintiff's ability to "do all activities of daily living[.]" R. 26; *see also* R. 323−24 (reflecting Dr. Brown's statements that Plaintiff could, *inter alia*, dress, bathe, groom herself, and do the cooking, cleaning, laundry, shopping, as well as manage money). Plaintiff also complains that the ALJ improperly relied on Plaintiff's ability to drive in order to discount Ms. Willms' opinions, because the record also reflects that Plaintiff used car services for at least two trips to New York and that she "held onto a friend during her visit to Times Square[,]" *Plaintiff's Memorandum of Law*, ECF No. 17, p. 21, The ALJ did not overstate or improperly consider Plaintiff's ability to drive (or ability to drive to New York, specifically). The ALJ specifically noted that Plaintiff "could drive, but did so selectively[,]" R. 23, that a co-worker drove her to work in Jersey City from her home in Staten Island, R. 22, and that she took a bus from her temporary job in 2016 between New Jersey and the Port Authority in New York, *id*., but also noted that Plaintiff was able to drive to visit her mother on occasion and was able to drive to her appointments. R. 22, 24. The ALJ also acknowledged that Plaintiff "reported having felt extremely paranoid and scared" when she traveled to Manhattan over a weekend and "reported feeling paranoia and anxiety" when going into a theater and walking around Times Square. R. 24. The ALJ specifically considered that Plaintiff has "some anxiety in public (but

25

most notably in Manhattan)" and therefore "limited her to low public contact and low production work." R. 26. The Court finds no error with the ALJ's characterization or consideration of Plaintiff's activities in this regard.[8] Finally, to the extent that Plaintiff argues that these activities were irrelevant to her ability to perform in a work setting or to perform throughout a normal work schedule, that argument is also unavailing. *See Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration"); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *Lowrey v. Kijakazi*, No. CV 21-176, 2022 WL 2133568, at *1 n.1 (W.D. Pa. June 14, 2022) (granting the Acting Commissioner's motion for summary judgment where "the ALJ found that Plaintiff is less limited than what Dr. Schiller found considering her activities, noting that Plaintiff 'is able to take care of personal needs and grooming, exercise, go for walks, take care of household pets, prepare meals, complete household chores such as cleaning and laundry, shop in stores, go to the zoo, use public transportation, spend time with others, get along with family, friends, neighbors, and/or authority figures, use a computer, pay bills, count change, handle a savings and/or checking account, read, play games on her iPad, and watch television'"); *Newcomb v. Kijakazi*, No. 3:20-CV-01552, 2022 WL 178820, at *9 (M.D. Pa. Jan. 18, 2022) (affirming ALJ's denial of benefits where, *inter alia*, where the ALJ considered an opinion in conjunction with the

---

[8] Notably, Dr. Brown also reported that Plaintiff's hobbies and interests included "art, photograph, and *travel*." R. 324 (emphasis added). In addition, Plaintiff does not challenge the ALJ's finding that Ms. Willms' opinion that Plaintiff's restrictions date back to 2001 because it is "totally contradicted by the record and suggests that Ms. Williams [sic] was not fully aware of the claimant's work and treatment history," and Plaintiff "was able to return to work and she only stopped working when her consultant job ended in April 2016. Further, the record did not document substantial limits." R. 27.

claimant's "activities of daily living, including caring for his young son, managing his own personal care, shopping, mowing, cooking, cleaning, and driving, the ALJ found that '[w]hile none of these activities alone [are] dispositive, taken together they suggest that [the claimant] is capable of performing work activity on a sustained and continuous basis within the above parameters'") (citations omitted); *cf. Scheel v. Comm'r of Soc. Sec.*, No. CV 20-5077, 2021 WL 4477163, at *5 (E.D. Pa. Sept. 30, 2021) (concluding that the ALJ's assessment that certain medical opinions were persuasive "was amply supported by the record" where, *inter alia*, "the ALJ's determination was supported by the daily activities that [the claimant] was still capable of performing, including doing laundry, shopping, driving, crafting, and running"); *D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("Her ability to drive, prepare meals, manage funds, shop, and take a cruise also contradicted her claims that she had difficulty concentrating, remembering information, and engaging in social activities.").

In short, Plaintiff has not persuaded this Court that the ALJ's assessment of the opinions of Dr. Maldonado and Ms. Willms violated the standards of 20 C.F.R. § 404.1520c.

### B.  Step Five

Plaintiff also challenges the ALJ's s step five determination, arguing that the Commissioner failed to carry his burden at that stage because the mental RFC determination "is inconsistent with the jobs identified by the vocational expert and the ALJ did not resolve this discrepancy." *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 14−18; *see also Plaintiff's Reply Brief*, ECF No. 19, pp. 1−3. Plaintiff's argument is not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential

evaluation, the Commissioner bears the burden of proof at step five. *Hess,* 931 F.3d at 201;

*Johnson v. Comm'r of Soc. Sec*., 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v.*

*Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is

often sought by the ALJ for that purpose [of determining whether other jobs exist in significant

numbers in the national economy that the claimant could perform] . . . and factors to be

considered include medical impairments, age, education, work experience and RFC.'" *Id*. at

205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability

determination proceedings typically includes, and often centers upon, one or more hypothetical

questions posed by the ALJ to the vocational expert." *Podedworny,*, 745 F.2d at 218. "Usually,

the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments

as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at

614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the

vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an

ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v.*

*Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554).

"[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established

limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554).

Credibly established limitations are limitations "that are medically supported and otherwise

uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically

supported but are also contradicted by other evidence in the record may or may not be found

credible—the ALJ can choose to credit portions of the existing evidence but cannot reject

evidence for no reason or for the wrong reason." *Id*. (cleaned up). A "vocational expert's

testimony concerning a claimant's ability to perform alternative employment may only be

considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 21, 62−64. The vocational expert responded that the jobs of hand packager, laundry worker, and warehouse worker would be appropriate for such an individual. R. 63−64. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218.

Plaintiff contends that the ALJ erred by relying on the vocational expert's testimony, because, Plaintiff argues, that testimony conflicts with the general educational development ("GED") reasoning levels contained in the Dictionary of Occupational Titles ("DOT").[9] *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 14−18; *Plaintiff's Reply Brief*, ECF No. 19, pp. 2−3. By way of background, "[t]he qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C,

---

[9] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id.* "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id.* (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id.* "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id.* (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)–(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id.* at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

Finally, "[a]s a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT[,]" *Zirnsak*, 777 F.3d at 617, but vocational experts may also "rely on their experiences rather than solely on the DOT[.]" *Butler v. Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015). Accordingly, when a vocational expert "provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. The ALJ will ask the vocational expert "if the evidence he or she has provided conflicts with information provided in the DOT" and, if the vocational expert's evidence appears to conflict with the DOT, the ALJ "will obtain a reasonable explanation for the apparent conflict." *Id*. The ALJ "must resolve this conflict before relying on the [vocational expert] evidence to support a determination or decision that the individual is or is not disabled[,]" explaining "in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." *Id*.

In the case at bar, Plaintiff appears to argue that the record reflects a conflict between the DOT and the jobs identified by the vocational expert and that the ALJ did not resolve that conflict. Specifically, Plaintiff argues that the RFC's limitation to carrying out simple instructions and making simple work-related decisions equates to a GED reasoning level 1, but that the jobs identified by the vocational expert require a GED reasoning level 2. *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 14−18; *Plaintiff's Reply Brief*, ECF No. 19, pp. 2−3. Plaintiff's arguments are not well taken.

The vocational expert stated that her testimony was consistent with the DOT except that the DOT does not address contact with co-workers or the public, on which point she relied on her

own experience and familiarity with the identified jobs. R. 64–65. Plaintiff's counsel never

objected to or challenged the vocational expert's testimony as inconsistent with the DOT. R. 62–

66. Plaintiff's current attempt to raise a discrepancy between the vocational expert's testimony

and the DOT therefore comes too late and the ALJ reasonably relied on her testimony, which

provided substantial support for the ALJ's step five determination. *See Tonti v. Saul*, No. CV 20-

92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to

the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the

hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived

the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020

WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's

qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on

the VE's testimony.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019

WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's

challenge to an alleged discrepancy between the vocational expert's testimony and the DOT

listings was unexplored during the hearing and later raised by the plaintiff in challenging the

ALJ's ruling).

   In any event, however, the Court is not persuaded that remand on this basis is required.

The United States Court of Appeals for the Third Circuit has held that a job with a reasoning

level 2 does not "contradict the mandate that [the claimant's] work be simple, routine and

repetitive." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*,

570 F. Supp. 2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks

and the definition of reasoning level 2) *aff'd*, 275 F. App'x 166, 168 (3d Cir. 2008)). The Third

Circuit has also held that "there is no bright-line rule stating whether there is a *per se* conflict

between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618.

In the present case, the jobs identified by the vocational expert—*i.e.*, hand packager, laundry worker, and warehouse worker—are unskilled with a GED reasoning level 2 and a SVP level 2. R. 29, 63–64; Packager, Hand, DICOT 920.587-018; Laundry Worker I, DICOT 361.684-014; Laborer, Stores (alternate title Warehouse Worker), DICOT 922.687-058. As discussed above, the vocational expert testified that her testimony was consistent with the DOT except on that point at which she relied on her experience and familiarity with the identified positions. R. 64–65. Moreover, as previously noted, Plaintiff's counsel did not object to the vocational expert's testimony nor did she otherwise identify a conflict between such testimony and the DOT. *See generally* R. 60–66. Therefore, there is uncontroverted evidence in the record that the vocational expert's testimony was consistent with the DOT standards. Under these circumstances, to remand this action would require that the Court disregard this uncontroverted evidence and—contrary to Third Circuit authority—establish a bright-line rule in this area. *See Zirnsak*, 777 F.3d at 618. This, the Court declines to do. Based on the record presently before this Court and the applicable law, the Court concludes that the ALJ in this case was entitled to rely on the vocational expert's uncontroverted testimony at step five. *See id.*; *cf. Money*, 91 F. App'x at 215; *Dance v. Comm'r of Soc. Sec.*, No. 1:20-CV-03141-NLH, 2021 WL 3144696, at *9 (D.N.J. July 26, 2021) (stating that "[t]his Court has also addressed - and rejected - " the claimant's argument that "the ALJ erred by finding Plaintiff to be capable of performing two of the jobs . . . because the DOT lists these jobs as having a reasoning level of 2, which is a higher level than the RFC's requirement that Plaintiff be limited to jobs with only simple instructions and tasks") (citations omitted); *Soto v. Comm'r of Soc. Sec.*, No. CV 18-14165, 2020 WL

7022652, at *8 (D.N.J. Nov. 30, 2020) ("Where, as here, plaintiffs were limited to simple, repetitive tasks, courts have repeated[ly] found that the plaintiffs are at least suited for jobs that require Reasoning Level 2.") (citations omitted); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215, 2020 WL 3073829, at *8 (D.N.J. June 10, 2020) ("Short of the ALJ repeating the exact phrase used by the DOT in its definition of GED level 2, something which the ALJ is not required to do, Plaintiff offers no other way the ALJ could have articulated the 'simple, routine tasks' limitation differently so that the limitation would align with a GED level 2 job."); *Molina Virola v. Comm'r of Soc. Sec.*, No. 18-CV-4778, 2020 WL 362747, at *4 (E.D. Pa. Jan. 22, 2020) ("The reasoning level determined by the ALJ was not limited to the ability to follow simple one or two-step instructions, which might trigger concern about her ability to perform jobs that require reasoning level 2. . . . Instead, the ALJ determined that [the claimant] can perform routine tasks and make simple work-related decisions. Such a limitation does not disqualify the plaintiff from work that requires reasoning level 2[.]") (citations omitted); *Montgomery v. Berryhill*, No. CV 17-0770, 2018 WL 1317856, at *5 (D.N.J. Mar. 14, 2018) (finding that "the ALJ's reliance on vocational expert testimony was "inherently reasonable" even though the claimant argued that "the ALJ needed an explanation from the [vocational expert] as to how the identified jobs—all with a DOT reasoning level of two, and thus allegedly beyond Plaintiff's mental abilities—comported with Plaintiff's deficiencies" because "Third Circuit precedent has established that level two jobs do not outright conflict with a requirement for simple, routine, and repetitive work") (citations omitted).[10]

---

[10] It is true that this and other district courts in this circuit have remanded actions because of an inconsistency between the identified jobs and the DOT's reasoning levels, but those cases are distinguishable. *See, e.g., Susan A. v. Comm'r of Soc. Sec.*, No. CV 21-07949, 2022 WL 2304666, at *8–10 (D.N.J. June 27, 2022) (remanding where the vocational expert testified that a limitation to simple instructions would preclude the ability to carry out detailed written and oral

In short, the Court finds that the Commissioner has carried the burden at step five of the sequential evaluation.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 11, 2022                                  *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE

---

instructions and the vocational expert identified jobs with a reasoning level 2); *Thomas v. Kijakazi*, No. CV 21-5153, 2022 WL 1747024, at *2 (E.D. Pa. May 31, 2022) (remanding where the vocational expert testified that the claimant, "who was limited to simple, routine tasks, would not be able to carry out detailed written and oral instructions" and the jobs identified by the vocational expert and adopted by the ALJ "all carry reasoning levels of at least two" thus "may be precluded by the ALJ's own RFC assessment"); *Vickers v. Comm'r of Soc. Sec.*, No. CV 21-1093, 2022 WL 1620076, at *2 (W.D. Pa. May 23, 2022) (reflecting a RFC that limited the claimant to "unskilled work at the SVP 1 or 2 levels" and "to one or two step instructions" and remanding where jobs identified by the ALJ have a GED reasoning level 2" and "at the very least, [] the record presents a potential conflict that must be resolved").